1  MARC N. BERNSTEIN (SBN 145837)
   mbernstein@blgrp.com
2  WILL B. FITTON (SBN 182818)
   wfitton@blgrp.com
3  THE BUSINESS LITIGATION GROUP, P.C.
   555 Montgomery Street, Suite 1650
4  San Francisco, CA 94111
   Telephone: 415.765.6633
5  Facsimile: 415.283.4804

6  Attorneys for Defendant
   DAVID LEVISON

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12

13  UNITED STATES OF AMERICA ex rel.        **Case No. 3:15-CV-01339-WHO**
    BRYAN BARNETTE; and STATE OF
14  CALIFORNIA ex rel. BRYAN BARNETTE,

15                              Plaintiffs,   **DEFENDANT DAVID LEVISON'S**
                                              **REPLY IN SUPPORT OF HIS**
16                                            **MOTION TO DISMISS**

17                    v.

18                                            Date:    May 8, 2019
    CARDIODX, INC., a California              Time:    2:00 pm
19  Corporation; PHLEBOTEX                    Judge:   Hon. William H. Orrick
    CORPORATION, a Florida Corporation;
20  DAVID LEVISON; DEBORAH LEVISON;
    and MISSY KEMP,
21

22                              Defendants.

23

24

25

26

27

28

---
Levison's Reply iso MTD                              Case No. 3: 15-cv-01339-WHO

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BARNETTE'S OPPOSITION FAILS TO SAVE HIS DEFICIENT
        COMPLAINT ..................................................................................................... 2

        A.      Barnette's Opposition Doesn't Demonstrate That the Amended
                Complaint Meets the Required Plausibility and Heightened
                Fraud Pleading Standards ............................................................................ 2

                1.   FRCP 8(a). ............................................................................................ 2

                2.   Barnette's Opposition Mischaracterizes the Allegations
                     in His Amended Complaint in an Attempt to Meet the
                     Rule 8(a) Pleading Requirements. ........................................................ 3

                3.   FRCP 9(b). ............................................................................................ 4

                     a.   Barnette's Opposition Misstates the Pleading Standard. ......... 4

                     b.   The Amended Complaint Fails To Meet the Correct
                          Rule 9(b) Standard. ................................................................... 5

        B.      Barnette's Opposition Demonstrates He Cannot Overcome the
                Amended Complaint's Reliance on Impermissible
                "Shotgun Pleading." ................................................................................... 7

        C.      Barnette's Opposition Doesn't Supply the Essential Elements
                Missing from His FCA Claims. .................................................................. 9

                1.   No False Statement or Fraudulent Course of Conduct
                     Is Alleged. ........................................................................................... 9

                2.   The Scienter Allegation Fails. ............................................................. 9

        D.      Barnette's Opposition Fails to Save the California Insurance
                Fraud Protection Act Causes of Action. ................................................... 10

                1.   Section 1871.7(a). .............................................................................. 11

                2.   Section 1871.7(b). .............................................................................. 12

III.    CONCLUSION ................................................................................................. 13

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Ashcroft v. Iqbal*

4
    556 U.S. 662 (2009)..................................................................................................2

5

*Bly-Magee v. California*

6
    236 F.3d 1014 (9th Cir. 2001) ................................................................................6

7

*Destfino v. Reiswig*

8
    630 F.3d 952 (9th Cir. 2011)...................................................................................7

9

*Ebeid ex rel. U.S. v. Lungwitz*

10
    616 F.3d 993 (9th Cir. 2010)...................................................................................5

11

*Gilead Scis., Inc. v. U.S. ex rel. Campie*

12
    139 S. Ct. 783 (2019) ..............................................................................................4

13

*Maa v. Ostroff*

14
    No. 12-cv-00200-JCS, 2013 WL 170337 (N.D. Cal. April 19, 2013).........11, 12

15

*People ex rel. Allstate Ins. Co. v. Weitzman*

16
    107 Cal. App. 4th 534 (2003)................................................................................10

17

*People ex rel. Alzayat v. Hebb*

18
    18 Cal. App. 5th 801 (2017)..................................................................................10

19

*People ex rel. Gov't Employees Ins. Co. v. Cruz*

20
    244 Cal. App. 4th 1184 (2016).......................................................................10, 11

21

*State ex rel. Wilson v. Superior Court*

22
    227 Cal. App. 4th 579 (2014)................................................................................11

23

*United States ex rel. Cafasso v. Gen'l. Dynamics C4 Sys., Inc*,

24
    637 F.3d 1047 (9th Cir. 2011)..................................................................................9

25

*United States v. DJO Glob., Inc.*

26
    678 F. App'x 594 (9th Cir. 2017).......................................................................2, 10

27

*United States v. Marshall Med. Ctr.*

28
    Case No. 2:12-cv-00098 JAM-KJN, 2015 WL 2235461 (E.D. Cal. May 12, 2015).3, 4, 6

*United States ex rel. Angeles v. Raytheon Co.*
    Case No. CV 10-00375 DDP (SHx), 2018 WL 7568579 (C.D. Cal. Nov. 20, 2018).......5

*United States ex rel. Campie v. Gilead Scis., Inc.*
    862 F.3d 890 (9th Cir. 2017)........................................................................4

*United States ex rel. Durkin v. Cty. of San Diego*
    300 F. Supp. 3d 1107 (S.D. Cal. 2018).......................................................10

*United States ex rel. Durkin v. Cty. of San Diego*
    No. 15CV2674-MMA (WVG), 2018 WL 3361148 (S.D. Cal. July 10, 2018) ...............10

*United States ex rel. Hendow v. Univ. of Phoenix*
    461 F.3d 1166 (9th Cir. 2006)......................................................................9

*United States ex rel. Lee v. SmithKline Beecham, Inc.,*
    245 F.3d 1048 (9th Cir. 2001)......................................................................6

*United States ex rel. Modglin v. DJO Glob. Inc.*
    114 F. Supp. 3d 993 (C.D. Cal. 2015) ......................................................2, 4

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Products, Inc.*
    2013 WL 774177 (S.D. Cal. Feb. 28, 2013) ..............................................7, 8

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*
    721 F. App'x 662 (9th Cir. 2018)..................................................................5

*United States v. Corinthian Colleges*
    655 F.3d 984 (9th Cir. 2011).....................................................................6, 8

*United States v. Safran Grp.*
    Case No. 15-CV-00746-LHK, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ...................8

*Unites States ex rel. Modglin v. DJO Glob. Inc.*
    48 F. Supp. 3d 1362 (C.D. Cal. 2014) .......................................................10

*Wool v. Tandem Computers, Inc.*
    818 F.2d 1433 (9th Cir. 1987).......................................................................5

**Statutes & Regulations**

31 U.S.C. § 3729(b)(l)..................................................................................9

Cal. Ins. Code § 1871.7..........................................................................11, 12, 13

Cal. Penal Code § 550 ............................................................................11, 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

FRCP 8(a) ...........................................................................................................2, 3, 4

FRCP 9(b) ...........................................................................................................4, 5, 6, 7

## I.      INTRODUCTION

Barnette has alleged five schemes in the Amended Complaint.  (Dkt. 18 ¶¶ 19-50.)  However, in his Opposition Barnette has admitted the only allegations pertaining to Mr. Levison appear in the first scheme regarding the approval of CardioDx's Corus CAD test.  (Dkt. 92 at 1:9-17.)  Indeed, he must, as there are no allegations linking Mr. Levison to the alleged illegal kickback, improper physician registry, unlawful screening days, or improper waiver of patient copays and deductibles.  (Dkt. 18 ¶¶ 25-50.)  And as to the first scheme, Barnette's Opposition argues that the one allegation mentioning Mr. Levison—that he was "heavily involved" and played a "key role[]" in the test's approval process (Dkt. 18 ¶20)—give Mr. Levison sufficient notice of the claims against him if viewed together with the remaining allegations that do not mention him.  (*Id.* ¶¶ 19, 21-25.)  That's simply not the case, as we show below.  Nor does Barnette overcome the authority cited by Mr. Levison showing that this isolated reference to him does not create a plausible claim, not meet the particularized pleading standards applicable here.

The Opposition also fails to save the Amended Complaint from its fatal reliance on "shotgun pleading."  In it, Barnette tries to expand solitary allegation mentioning Mr. Levison into the detailed, defendant-specific allegations the Ninth Circuit requires.  That stretches this isolated allegation further than it can bear.

Nor can the allegation support the gilding Barnett now seeks to add to reach the missing elements of a False Claims Act claim.  The actual, unvarnished allegations simply omit these required elements.

Finally, Barnette's Opposition doesn't overcome the legislative history of the California Insurance Fraud Protection Act (IFPA) that make that act inapplicable to Mr. Levison.  Barnette's Opposition fails to address the fact that claims based on medically unnecessary tests—as Barnette has asserted here—aren't covered by the IFPA, and that the only remaining basis for these claims—illegal kickbacks—

Levison's Reply iso MTD                                    Case No. 3:15-cv-01339-WHO

1    similarly don't apply to Mr. Levison in that he is not mentioned anywhere in the

2    allegations of those schemes (as Barnette acknowledges).

3    **II.    BARNETTE'S OPPOSITION FAILS TO SAVE HIS DEFICIENT
          COMPLAINT.**

4          **A.    Barnette's Opposition Doesn't Demonstrate That the Amended
                Complaint Meets the Required Plausibility and Heightened

5                Fraud Pleading Standards.**

                **1.    FRCP 8(a).**

6

7

8          Barnette's Opposition asserts that the Amended Complaint meets the Rule

9    8(a) pleading standard.  (Dkt. 92 at 8:15-9:3.)  He is wrong.  Facial plausibility

10   requires enough detail to show why each defendant is liable.  *See United States ex rel.*

11   *Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom.*

12   *United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017), (citing *Ashcroft v.*

13   *Iqbal*, 556 U.S. 662, 678 (2009)).  The Amended Complaint doesn't meet this

14   requirement, as Barnette's Opposition makes abundantly clear.

15         Mr. Levison is completely absent from Barnette's summary of the Corus CAD

16   test approval process allegations.  (*See* Dkt. 92 at 9:4-22.)  That is because he is nearly

17   absent from the Barnette's Amended Complaint.  (*See* Dkt. 16 ¶¶ 19-24.)  This dearth

18   belies Barnette's assertion that the Amended Complaint puts Mr. Levison on notice

19   of his role in the alleged scheme to defraud Medicare: Barnette describes what

20   CardioDx did, but not what Mr. Levison is supposed to have done.  (*See* Dkt. 92 at

21   9:20-27.)  And nothing in the Amended Complaint provides detail sufficient to show

22   why he, in contrast to CardioDx, would be liable for this alleged scheme.  Here, the

23   only allegation against Mr. Levison is that he was "heavily involved" and "played [a]

24   key role[]" in the approval of the Corus CAD test. (Dkt. 16 ¶ 20.)  But involved

25   precisely how?  And played which key role?  The Amended Complaint does not say.

26   This is insufficient to satisfy Rule 8(a), and all claims against Mr. Levison should be

27   dismissed.  *See United States v. Marshall Med. Ctr.*, Case No. 12-CV-00098 JAM-KJN,

28   2015 WL 2235461, at *3 (E.D. Cal. May 12, 2015) (allegation that defendant

1  "partner[ed] with" and "contracted with" others in fraudulent acts was "too vague to

2  state a claim").[1]

3          **2.    Barnette's Opposition Mischaracterizes the Allegations
                   in His Amended Complaint in an Attempt to Meet the
4                  Rule 8(a) Pleading Requirements.**

5          In an attempt to demonstrate that the Amended Complaint does provide

6  sufficient notice to Mr. Levison, Barnette mischaracterizes what he has actually

7  alleged, and from that, makes unsupported inferences about Mr. Levison's intent

8  during the Palmetto GBA approval process for the Corus CAD test.  Barnette

9  inaccurately summarizes the Amended Complaint's allegations about the test

10  approval process this way:

11          • CardioDx obtained Medicare approval for its Corus CAD test by
            representing to Palmetto GBA that the test would "rule out" fifty
12          percent of all patients for further CAD testing and thereby save
            taxpayer money by obviating the need for additional costly testing
13          and studies on Medicare patients. (FAC ¶ 19).

14          • When CardioDx made representations about the Corus CAD
            test's "rule out" percentage, it knew "that none of the thousands of
15          Corus CAD tests that had been run had produced 'rule out' scores
            for men over 65 years old, and that the test had only produced a
16          rule out score for less than twenty (20) percent of women over age
            65." (FAC ¶ 21).
17
            • CardioDx's Chief Commercial Officer, Deborah Kilpatrick,
18          admitted that CardioDx knowingly failed to inform
            Medicare/Palmetto GBA that its Corus CAD test could not "rule
19          out" fifty percent of all patients. Kilpatrick made this admission at
            a CardioDx meeting in 2013 when she stated "[w]e obviously
20          didn't tell them that" in response to questions from CardioDx sales
            representatives as to how CardioDx could have obtained Medicare
21          coverage for the Corus CAD test in light of its true "rule out"
            capability. (FAC ¶ 21).
22

23

24
_____

25  [1] Barnette doesn't address *Marshall* in his Opposition, despite Mr. Levison having
    cited it in his opening brief and incorporated Ms. Kilpatrick's arguments regarding it.
26  (Dkt. 89 at 3:17-20; 3:27-4:1.)  Barnette does address *Marshall* in opposition to
    Ms. Kilpatrick's Motion, distinguishing it on the basis that he has alleged more in the
27  Amended Complaint than the complaint in *Marshall* because he includes an
    allegation (¶ 21) regarding a statement Ms. Kilpatrick allegedly made at a company
28  meeting.  (Dkt. 86 at 11:26-12:11.)  There is no such additional allegation against
    Mr. Levison, which likely led Barnette to omit discussion of this on-point case in his
    Opposition.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

• Over 120,000 Corus CAD tests have been sold by CardioDx,
thirty (30) to forty (40) percent of which were billed to Medicare,
at a cost to taxpayers of approximately $1,095 each. CardioDx's
fraudulent inducement renders false every claim it submitted
to Medicare. (FAC ¶ 22).

(Dkt. 92 at 9:6-19.)  From the above, Barnette then concludes:

The FAC alleges that Levison, acting in his role as CardioDx's
founder, CEO, Chief Strategy Officer, and board member, carried
out CardioDx's scheme with Kilpatrick by seeking Medicare
coverage for the Corus CAD test when they knew Medicare would
not approve coverage if it was provided the data regarding the
Corus CAD test's poor "rule out" capability. (FAC ¶¶ 19-22).

(Dkt. 92 at 10:1-4.)  This summary is inaccurate, and the conclusion is wrong.

First, the Amended Complaint makes clear that the submission to Palmetto

GBA occurred in 2012, while the allegations regarding test data are from 2013.  (Dkt.

16 ¶¶ 20, 21.)  Second, and tellingly, Barnette does not mention Mr. Levison at all in

his characterization of the alleged misrepresentations to Palmetto GBA.  (*See* Dkt. 92

at 9:6-19.)  That is because the Amended Complaint does not allege anything about

him vis-à-vis the test data.  (*See* Dkt. 16 ¶¶ 19-24.)  Thus, Barnette's assertion of what

Mr. Levison knew and intended during the Corus CAD approval process (Dkt. 92 at

10:1-4) is improper and unsupported by what was pleaded.  Barnette cannot

bootstrap Mr. Levison onto allegations made about other defendants and meet his

obligation to put Mr. Levison on notice of what he must defend against.  *See Marshall*,

2015 WL 2235461, at *3; *Modglin*, 114 F. Supp. 3d at 1008.

       **3.**      **FRCP 9(b).**

          **a.**      **Barnette's Opposition Misstates the Pleading
Standard.**

The heightened pleading standard of Rule 9(b) applies to claims brought

under the FCA.  *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 898

(9th Cir. 2017), *cert. denied sub nom. Gilead Scis., Inc. v. United States ex rel. Campie*, 139

S. Ct. 783 (2019) ("A claim under the False Claims Act must not only be plausible,

Fed. R. Civ. P. 8(a), but pled with particularity under Rule 9(b).").  Barnette contends

4

1   that the Ninth Circuit has rejected Rule 9(b)'s stringent standards, citing *Ebeid ex rel.*

2   *United States v. Lungwitz.* 616 F.3d 993 (9th Cir. 2010).  (*See* Dkt. 92 at 7:24-8:3.)  He's

3   wrong.  The *Ebeid* court actually reaffirmed that Rule 9(b) applies to FCA cases.

4   *Ebeid*, 616 F.3d at 998-99.

5           Barnette also points to *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th

6   Cir. 1987) and *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F. App'x 662,

7   663–64 (9th Cir. 2018) for the proposition that the requirements of Rule 9(b) relax "as

8   to matters peculiarly within the opposing party's knowledge."  (Dkt. 92 at 8:3-9.)

9   However, *Ebeid* expressly rejected this standard from *Wool* in the FCA context.  *See*

10   *Ebeid*, 616 F.3d at 999 ("We are not persuaded that this limited principle should be

11   applied in this case.  To jettison the particularity requirement simply because it

12   would facilitate a claim by an outsider is hardly grounds for overriding the general

13   rule, especially because the FCA is geared primarily to encourage insiders to disclose

14   information necessary to prevent fraud on the government.").  And *Vatan* is a

15   nonbinding decision that ultimately is consistent with Mr. Levison's position.  There

16   the court found pleading requirements were met as to an entity defendant because

17   the complaint contained specific examples of falsehoods made by that entity

18   defendant.  *See Vatan*, 721 F. App'x at 64; *see also United States ex rel. Angeles v.*

19   *Raytheon Co.*, Case No. CV 10-00375 DDP (SHx), 2018 WL 7568579, at *3 (C.D. Cal.

20   Nov. 20, 2018) (finding that *Vatan*'s conclusion that Rule 9(b) was satisfied where

21   specific examples of falsehoods were pleaded cannot suggest that specificity

22   pleading requirements don't apply in the first instance).  Here, of course, there are no

23   specific examples of falsehoods made by Mr. Levison—all such falsehoods are

24   ascribed to CardioDx.

25                      **b.      The Amended Complaint Fails To Meet the
                                 Correct Rule 9(b) Standard.**
26

27           Barnette doesn't address the proper Ninth Circuit authority on the Rule 9(b)

28   pleading standard cited by Mr. Levison.  To meet the heightened pleading standards

set out in that authority, Barnette must give Mr. Levison enough detail regarding his alleged fraudulent conduct to meaningfully respond.  *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011).  A complaint must provide "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  Here again, the only allegation against Mr. Levison is that he was "heavily involved" and "played [a] key role[]" in the approval of the Corus CAD test.  (Dkt. 16 ¶ 20.)  Under the above standard, this allegation is not "particular misconduct which is alleged to constitute the fraud charged."  And Mr. Levison cannot "meaningfully respond" to this allegation in that it isn't even a description of fraudulent conduct.  The Amended Complaint provides Mr. Levison no detail regarding the fraud he is alleged to have committed as part of the approval process and does not meet the heightened requirements of Rule 9(b).  *See Bly-Magee*, 236 F.3d at 1018-19 (allegations that defendant "concealed the fraudulent submission of false claims" and conspired to obtain payment is the "complete absence of particularity"); *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (broad allegation that defendant "'knowingly ... changed control numbers [on various tests] to wrongfully represent that the laboratory results fell within an acceptable standard of error'" without factual support failed to satisfy heightened pleading standard).[2]  And as all the causes of action asserted against Mr. Levison sound in fraud, all should be dismissed.

---

[2] As with *Marshall* above, Barnette doesn't address *Bly-Magee* and *Lee* in his Opposition, despite Mr. Levison citing them in his motion and joining Ms. Kilpatrick's argument regarding them.  (Dkt. 89 at 4:14-16, 21-22.)  Barnette does address these cases in opposition to Ms. Kilpatrick's Motion, and again distinguishes them on the basis that the Amended Complaint contains an allegation regarding a statement Ms. Kilpatrick allegedly made at a company meeting.  (Dkt. 86 at 12:18-20; 13:7-13.)  But again, there is no such additional allegation against Mr. Levison.  He also joins and incorporates here Ms. Kilpatrick's further discussion of those cases in her Reply, (Dkt. 88 at 6:23-8:2.)

6

1   **B.    Barnette's Opposition Demonstrates He Cannot Overcome the
2          Amended Complaint's Reliance on Impermissible "Shotgun
           Pleading."**

3      With the one exception already noted, all of Barnette's allegations

4   impermissibly lump together all defendants.  These lumped allegations omit a

5   description of Mr. Levison's individual conduct sufficient to state what he is accused

6   of.

7      Much of Barnette's argument in opposition are red herrings or misstatements.

8   First, Mr. Levison never argued that all defendants must have engaged in all alleged

9   fraudulent conduct or that incorporating by reference is impermissible.  (*See* Dkt. 92

10  at 10:6-22.)  Second, the Amended Complaint never alleges that Mr. Levison

11  "knowingly misl[led] Medicare/Palmetto GBA[,]" that he made misrepresentations,

12  or that the "misrepresentations caused CardioDx to submit thousands of false claims

13  . . . ."  (*Id.* at 10:23-28.)  Again, all that is alleged is that Mr. Levison was heavily

14  involved and played a "key role" in the approval process.  Contrary to Barnette's

15  assertion, Mr. Levison is not put on notice of what he did that was allegedly

16  fraudulent.

17     Moreover, Barnette's efforts to distinguish the "shotgun pleading" cases are

18  unavailing, and instead support Mr. Levison's argument.  Barnette is correct that

19  *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) held that Rule 9(b) requires

20  "plaintiffs to differentiate their allegations when suing more than one defendant"

21  and that a complaint that fails "to set out which of the defendants made which of the

22  fraudulent statements/conduct" should be dismissed.  (Dkt. 92 at 11:2-5.)  But

23  Barnette has walked right into this very buzz saw: the Amended Complaint talks

24  about "Defendants" or "CardioDx," but nothing about what Mr. Levison has done

25  other than a single vague statement.

26     Barnette is also correct that *United States ex rel. Pecanic v. Sumitomo Elec.*

27  *Interconnect Products, Inc.*, 2013 WL 774177, at *4 (S.D. Cal. Feb. 28, 2013) found that

28  "commingling" defendants made the complaint "unclear as to what was each

7

1    Defendant's role in the alleged fraud." (Dkt. 92 at 11:8-16.)  But the Amended

2    Complaint doesn't describe Mr. Levison's alleged "specific fraudulent conduct" as

3    Barnette contends.  As such, *Pecanic* does support dismissal of the claims against

4    Mr. Levison.

5         The same is true with regard to *United States v. Safran Group.*  Barnette tries to

6    distinguish the case on the basis that the Amended Complaint describes "the specific

7    scheme that Levison spearheaded." (Dkt. 92 at 11:17-12:2.)  However, Barnette's

8    allegations against Mr. Levison are all collective, and none allege he "spearheaded a

9    scheme."  Similarly, there is nothing factual in the Amended Complaint that links

10   Mr. Levison to a kickback scheme, though Barnette alleges that "Defendants

11   submitted or caused to be submitted false claims based on illegal kickbacks." (Dkt.

12   16 ¶ 63.)  Such collective allegations are insufficient when generalized against

13   multiple defendants.  *United States v. Safran Grp.*, Case No. 15-CV-00746-LHK, 2017

14   WL 235197, at *8 (N.D. Cal. Jan. 19, 2017).

15        Finally, Barnette argues *United States v. Corinthian Colleges* is inapposite

16   because the Amended Complaint "includes two pages of allegations detailing the

17   fraudulent conduct orchestrated by Levison and Kilpatrick. (*See* FAC ¶¶ 19-24)."

18   (Dkt. 92 at 12:3-11.)  However, as Barnette points out, in *Corinthian Colleges* the Ninth

19   Circuit held the pleading was improper because the "**only** factual allegation

20   involving the Individual Defendants" was that they "monitored and approved of the

21   illegal recruiter compensation practices as a means to obtain targeted enrollment

22   levels." (*See id.* (citing *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.

23   2011) (emphasis added by Barnette).)  That is exactly what we have here: there is

24   only one factual allegation involving Mr. Levison, while the rest refer to "CardioDx"

25   or "Defendants."  This impermissible lumping of individual defendants with an

26   entity defendant fails to satisfy FCA pleading requirements as to the individual

27   defendants.  *Corinthian Colleges*, 655 F.3d at 998.

28

1

**C.      Barnette's Opposition Doesn't Supply the Essential Elements Missing from His FCA Claims.**

2

3

**1.      No False Statement or Fraudulent Course of Conduct Is Alleged.**

4      In his Opposition, Barnette baldly asserts that he has pleaded the required

5  false statement or fraudulent course-of-conduct element of an FCA claim because the

6  Amended Complaint alleges that "CardioDx carried out its fraudulent inducement

7  scheme through Levison . . . ." (Dkt. 92 at 12:26-28.) *See United States ex rel. Hendow*

8  *v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (setting out FCA claim

9  elements).  But that is not what the Amended Complaint actually alleges.  Rather, the

10  Amended Complaint conclusorily asserts Mr. Levison's "key role" in inducing

11  approval without describing what that role was or how Mr. Levison performed it.

12  (*See* Dkt. 16 ¶¶ 19-24.)  For example, the Amended Complaint does not reference

13  anything Mr. Levison allegedly said or did in the test approval process.  Accordingly,

14  no false claim or fraudulent course of conduct has been alleged with regard to Mr.

15  Levison, and the FCA causes of action must be dismissed as to him.  *United States ex*

16  *rel. Cafasso v. Gen'l. Dynamics C4 Sys., Inc*, 637 F.3d 1047, 1056-58 (9th Cir. 2011).

17      **2.      The Scienter Allegation Fails.**

18      An FCA claim must allege scienter, yet the Amended Complaint fails to do so

19  for Mr. Levison.  (*See* Dkt. 16 ¶¶ 19-24.)  *See Hendow*, 461 F.3d at 1174 (FCA claim

20  elements).  There is nothing in the Amended Complaint about what Mr. Levison

21  knew and when he knew it, as Barnette effectively admits in his Opposition.

22  Barnette argues, however, that scienter may be alleged generally, pointing to

23  Paragraph 62 of the Amended Complaint as satisfying that standard.  (Dkt. 92 at

24  14:10-14.)

25      Paragraph 62 alleges, "Defendants knowingly (as defined in 31 U.S.C.

26  § 3729(b)(l)) presented or caused to be presented false claims for payment or

27  approval to an officer or employee of the United States."  This allegation is vague

28  and conclusory as to Mr. Levison, offering no facts about what he knew or when.

9

1   Such allegations fail to plead scienter.  *See Unites States ex rel. Modglin v. DJO Glob.*

2   *Inc.*, 48 F. Supp. 3d 1362, 1405 (C.D. Cal. 2014), *aff'd sub nom. United States. v. DJO*

3   *Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Although, as noted, scienter may be

4   alleged generally in an FCA case, none of the facts relators plead support their

5   conclusory allegation that defendants knowingly submitted false claims."); *United*

6   *States ex rel. Durkin v. Cty. of San Diego*, 300 F. Supp. 3d 1107, 1129 (S.D. Cal. 2018)

7   ("Plaintiff merely alleges that Defendant 'knew that these certifications,

8   representations, promises and assurances were false and did not intend to comply

9   with federal law and regulations.' . . . These allegations are vague and conclusory

10   and, accordingly, scienter is not met with respect to the fifth allegedly false

11   statement."); *United States ex rel. Durkin v. Cty. of San Diego*, No. 15CV2674-MMA

12   (WVG), 2018 WL 3361148, at *5 (S.D. Cal. July 10, 2018) ("[U]nder the FCA . . . a

13   complaint asserting claims based on false statements must plead scienter of the

14   speaker.") (citation and internal quotations omitted), *appeal filed*, (9th Cir. Aug. 10,

15   2018).  Thus, the FCA causes of action should be dismissed as to Mr. Levison.

16       **D.    Barnette's Opposition Fails to Save the California Insurance**
            **Fraud Protection Act Causes of Action.**

17

18       Barnette contends that the California Insurance Fraud Protection Act (IFPA)

19   extends to health insurance claims not tied to workers' compensation or automobile

20   accidents.  (Dkt. 92 at 16:18-25.)  But Barnette doesn't address the statute's legislative

21   history.  The IFPA was enacted to combat workers' compensation insurance fraud,

22   and it was later amended to deter fraudulent automobile insurance claims.  *People ex*

23   *rel. Allstate Ins. Co. v. Weitzman*, 107 Cal. App. 4th 534, 547-52 (2003) (discussing

24   legislative history); *People ex rel. Alzayat v. Hebb*, 18 Cal. App. 5th 801, 812 (2017),

25   *review denied* (Apr. 11, 2018).  *Cf. People ex rel. Gov't Employees Ins. Co. v. Cruz*, 244 Cal.

26   App. 4th 1184, 1187, 1192 (2016) (GEICO suit for automobile insurance fraud).

27

28

**Levison's Reply iso MTD**                                    **Case No. 3:15-cv-01339-WHO**

1   Barnette asserts neither claim here, requiring dismissal.[3]  Nor does the IFPA's

2   incorporation of Penal Code § 550 necessarily make it applicable to non-workers'

3   comp and automobile claims, as Barnette contends without support.  (Dkt. 92 at

4   15:24-17:5.)  It simply means that violations of Penal Code § 550 in the context of

5   workers' comp and auto insurance claims are subject to the penalties outlined in the

6   IFPA.  Cal. Ins. Code § 1871.7(b).

7              **1.     Section 1871.7(a).**

8        Barnette's Opposition does not establish that § 1871.7(a) of the IFPA (the basis

9   for the Fifth Cause of Action) is applicable to Mr. Levison.  Section 1871.7(a) prohibits

10  employment of runners, cappers, steerers or others to procure clients or patients.

11  The statute's use of the term "employ" demonstrates that it applies to an employer-

12  type entity, like CardioDx, not that entity's employees, officers, or directors, like

13  Mr. Levison.  "What kind of employment is unlawful?  Employment of a person or

14  persons ('runners, cappers, steerers or other persons'), for a specified purpose."

15  *Wilson*, 227 Cal. App. 4th at 593; *Cruz*, 244 Cal. App. 4th at 1192.

16       Barnette's proffered interpretation of "employ" improperly removes the

17  compensation component, which is clearly present even in the cases he cites.  (Dkt. 92

18  at 14:24-15:6.)  *Wilson* involved a suit brought against Bristol-Myers Squibb, not its

19  employees/officers/directors, for "provid[ing] an item or service of value to a

20  physician in order to induce the prescription of BMS drugs."  *Wilson*, 227 Cal. App.

21  4th at 593.  And *Cruz* involved a payment of rent by a chiropractor—a business entity

22

23  [3] And while *Wilson* and *Maa* are examples of cases brought under the IFPA not
    involving workers' comp or automobile insurance claims, neither case addressed the
24  question of whether the asserted claims were permissible under the IFPA, and
    neither can be taken as precedent on the question one way or the other.  *See State ex*
25  *rel. Wilson v. Superior Court*, 227 Cal. App. 4th 579, 592-94 (2014) (observing "the
    dearth of appellate review of matters involving interpretation of section 1871.7"), *as*
26  *modified on denial of reh'g* (July 25, 2014); *Maa v. Ostroff*, No. 12-cv-00200-JCS, 2013 WL
27  170337, at *21 (N.D. Cal. April 19, 2013) (dismissing IFPA claim based on plaintiff's
    pleading deficiencies).
28

11

1   unto herself—to a landlord.  *Cruz*, 244 Cal. App. 4th at 1198.  No others in Cruz's

2   office were named as defendants.  Moreover, Barnette uses "employ" in the same

3   way regarding Phlebotek.  (*See* Dkt. 75 at 22:27-28 (discussing *Wilson*).)  These cases

4   make clear that if § 1871.7(a) applies, it would apply to CardioDx, not Mr. Levison.

5       Additionally, unlike in *Cruz*, there is no allegation in the Amended Complaint

6   that Mr. Levison himself hired or employed any of the prohibited persons under

7   § 1871.7(a), or that he had the requisite scienter.  The Fifth Cause of Action should be

8   dismissed as to him on these bases as well.

9                   **2.      Section 1871.7(b).**

10      Barnett's Opposition ignores what is actually pleaded in his Sixth through

11  Ninth Causes of Action seeking penalties under § 1871.7(b) of the IFPA for alleged

12  violations of the Penal Code.  Barnette bases these causes of action on allegations that

13  the claims submitted were false or fraudulent because the tests being reimbursed

14  were "medically . . . unnecessary" and "procured by . . . illegal kickbacks."  (Dkt. 16

15  ¶¶ 86, 91, 96, 101.)  However, as Phlebotek demonstrated, penalties are unavailable

16  under § 1871.7(b) for medically unnecessary tests.  *Maa*, 2013 WL 170337, at \*21.

17  (Dkt. 65 at 24:14-26:2; Dkt. 82 at 7:18-8:9.)  (Mr. Levison again joins and incorporates

18  these arguments here.)  Barnette's only response to Phlebotek's argument is that

19  these causes of action are still viable because they also have kickback allegations (in

20  addition to the medically unnecessary allegations).

21      Barnette contends that penalties under § 1871.7(b) are appropriate because

22  kickbacks are violations of § 1871.7(a) and Penal Code § 550(a)(1).[4]  (Dkt. 75 at 22:9-

23  17; 23:1-23.)  But as detailed above, Mr. Levison has not violated § 1871.7(a), and the

24  cited Penal Code sections do not apply to Mr. Levison, as he is not mentioned

25

26

27

28  [4] "Every person who violates any provision of this section or Section 549, 550, or 551
    of the Penal Code shall be subject . . . to a civil penalty . . . ."  Cal. Ins. Code
    § 1871.7(b).

                                    12

1  anywhere in the Amended Complaint's kickback allegations, as Barnette

2  acknowledges.  (*See* Dkt. 16 at 7-13; Dkt. 92 at 1:9-17.)

3        Barnette also contends that Mr. Levison is subject to penalties under

4  § 1871.7(b) because even if he didn't submit false or fraudulent claims himself, he

5  knowingly "caused" false or fraudulent claims to be submitted, which is proscribed

6  by Penal Code § 550(a)(6).  (Dkt. 92 at 16:20-25.)  However, this argument merely

7  begs the question: it presumes the submitted claims were false or fraudulent.  But as

8  established above, the bases in the Amended Complaint on which Barnette asserts

9  the submitted claims were false or fraudulent—"medically unnecessary" and

10 "procured by kickback"—fail.  Moreover, Barnette's argument that Mr. Levison

11 knew that the submitted claims were false and fraudulent is premised in a scienter

12 allegation in the Amended Complaint that has nothing to do with Mr. Levison—

13 Paragraph 21, note 2.  (*See id.* at 16:26-17:5.)  And as demonstrated above, Barnette

14 has not alleged Mr. Levison's scienter, as required.  Contrary to Barnette's assertion,

15 the Amended Complaint does not state a claim against Mr. Levison under § 1871.7(b)

16 or California Penal Code § 550.

17 **III.    CONCLUSION**

18       The Court should grant Mr. Levison's Motion to Dismiss as to all claims

19 against him because they each fail to state a claim upon which relief can be granted.

20

21 RESPECTFULLY SUBMITTED,

22

23 DATED:  April 19, 2019                    THE BUSINESS LITIGATION GROUP, P.C.

24

25                                          By:     /s/ Will B. Fitton
                                                Will B. Fitton

26

27                                          Attorneys for Defendant

28                                          DAVID LEVISON